UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

ZIP AVIATION, LLC,

    Plaintiff,

-v-

ROBINSON AVIATION (RVA), INC., and
TOWN OF EAST HAMPTON,

    Defendants.

Civil Action No.: 2:21-CV-04111-GRB

MEMORANDUM OF POINTS AND AUTHORITIES OF AMICI CURIAE
THE NATIONAL BUSINESS AVIATION ASSOCIATION, INC.,
THE EASTERN REGION HELICOPTER COUNCIL, INC., AND
HELICOPTER ASSOCIATION INTERNATIONAL, INC.
IN SUPPORT OF PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

KMA ZUCKERT LLC

Nicholas E. Pantelopoulos, Esq. (NP-4969)
1350 Broadway, Suite 2410
New York, NY 10018
nep@kmazuckert.com
Tel. (212) 922-0450

Jolyon ("Jol") A. Silversmith, Esq.
Barbara M. Marrin, Esq.
888 17th Street, N.W., Suite 700
Washington, D.C. 20006
jsilversmith@kmazuckert.com
bmarrin@kmazuckert.com
Tel. (202) 298-8660

# Table of Contents

Table of Contents ................................................................................................................. i

Table of Authorities ............................................................................................................. ii

    I.      Preliminary Statement of *Amici Curiae* ........................................................... 1

    II.     Statement of Interest ........................................................................................ 2

    III.    Facts ................................................................................................................. 3

    IV.    Argument ......................................................................................................... 4

                     A.  The Town's SVFR Prohibition is Preempted by Federal Law ............. 5

                     B.  The Issues Raised in this Case Have National Implications ................ 9

                     C.  Zip Otherwise is Entitled to a Preliminary Injunction ........................ 10

    V.     Conclusion .................................................................................................... 10

# Table of Authorities

## Cases

Arapahoe County Public Airport Authority v. FAA, 242 F.3d 1213 (10th Cir. 2001) ................ 8

Automobile Club of New York, Inc. v. Port Authority of New York and New Jersey, No. 11-CV-6746-RJH, 2011 WL 5865296 (S.D.N.Y. Nov. 22, 2011) ................ 1

Blue Sky Entertainment, Inc. v. Town of Gardiner, 711 F.Supp. 678 (N.D.N.Y. 1989) ................ 5

City of Burbank v. Lockheed Air Terminal, Inc., 411 U.S. 624 (1973) ................ 9

CSX Transportation, Inc. v. Williams, 406 F.3d 667 (D.C. Cir. 2005) ................ 9

Friends of the East Hampton Airport, Inc. v. Town of East Hampton, 841 F.3d 133 (2d Cir. 2016) ................ 3, 6

In re Korean Air Lines Co., Ltd., 642 F.3d 685 (9th Cir. 2011) ................ 6

Millard Refrigerated Services v. FAA, 98 F.3d 1361 (D.C.Cir. 1996) ................ 7

Northwest Airlines v. Minnesota, 322 U.S. 292 (1944) ................ 5

U.S. v. Westchester County, 571 F.Supp. 786 (S.D.N.Y. 1983) ................ 10

Valley Med Flight, Inc. v. Dwelle, 171 F.Supp.3d 930 (D.N.D. 2016) ................ 6

## Statutes

49 U.S.C. § 40101 ................ 9

49 U.S.C. § 40102 ................ 6

49 U.S.C. § 40103 ................ 5, 10

49 U.S.C. § 41713 ................ 6, 9

49 U.S.C. § 47101 ................ 10

49 U.S.C. § 47103 ................ 10

49 U.S.C. § 47107 ................ 5

49 U.S.C. § 47521 ................ 6, 8

## Regulations

14 C.F.R. Part 16 .................................................................................................................. 5

14 C.F.R. § 65.45 ................................................................................................................ 5

14 C.F.R. Part 135 ............................................................................................................... 6

14 C.F.R. Part 161 ............................................................................................................... 6

## Administrative Materials

Airport Compliance Manual, FAA Order 5190.6B (September 30, 2009) .......................... 5

National Business Aviation Association, Inc. v. Town of East Hampton, New York, FAA docket
         no. 16-15-08, Final Agency Decision and Order, 2020 WL 6818718 (July 9, 2020) ..... 3, 7

**I.      Preliminary Statement of *Amici Curiae***

The National Business Aviation Association, Inc. ("NBAA"), the Eastern Regional Helicopter Council, Inc. ("ERHC"), and Helicopter Association International, Inc. ("HAI") (collectively, "the Associations"), have moved this Court for an order authorizing them to appear as *amici* in the above-captioned proceeding ("Motion"), and further request that the Court consider the following Memorandum of Points and Authorities (the "Brief") in support of the July 22, 2021 motion filed by Zip Aviation, LLC ("Zip"), which requests a preliminary injunction and which is scheduled for a hearing by this Court on July 30, 2021.

Although neither the Federal Rules of Civil Procedure nor the local rules of this Court set standards for *amicus* filings, the Associations respectfully submit that their participation in this case, at this time and beyond, would assist this Court by virtue of their experience and perspective regarding access issues at East Hampton Airport ("HTO") in particular and with the overall requirements of the Federal Aviation Administration ("FAA") for the operation of aircraft in the national airspace system. "The usual rationale for amicus curiae submissions is that they are of aid to the court and offer insights not available from the parties." <u>Automobile Club of New York, Inc. v. Port Authority of New York and New Jersey</u>, No. 11-CV-6746-RJH, 2011 WL 5865296, at *1 (S.D.N.Y. Nov. 22, 2011).

Pursuant to Fed. R. Civ. P. 7.1, none of the Associations has a parent corporation. As non-profit associations, the Associations do not have any stock and no corporation owns any of their stock. Although not strictly applicable, consistent with Fed. R. App. P. 29(a)(4)(E) the Associations further represent that their counsel has authored the Brief and no other person, including the parties or their counsel, have contributed money that was intended to fund preparing or submitting the Brief. Pursuant to Local Rule 37.3(a), the Associations yesterday, after a notice

of appearance was filed, asked counsel for the defendant Town of East Hampton ("Town") if it objects to this Motion but have not yet received a reply.  As of when this filing was finalized, no counsel had yet appeared in the proceeding for Robinson Aviation, Inc. ("RVA").

## II. Statement of Interest

Founded in 1947, NBAA is a nationally-recognized, non-profit trade association which represents the interests of more than 11,000 members that collectively operate more than 11,000 aircraft in connection with their business or are otherwise involved in business aviation.  NBAA, its membership, its history, its mission, and its activities are described in detail at http://www.nbaa.org.

Founded in 1979, ERHC represents the interests of helicopter operators in the New York metropolitan area and throughout the northeast U.S.  ERHC actively engages with communities to address the concerns of members and residents relating to helicopter and heliport issues.  ERHC, its membership, its history, its mission, and its activities are described in detail at http://www.erhc.org.

Founded in 1948, HAI is the trade association for the international helicopter industry; is dedicated to the promotion of the helicopter as a safe, effective method of commerce and represents more than 1,100 companies and more than 16,000 industry professionals in more than 65 countries. HAI, its membership, its history, its mission, and its activities are described in detail at http://www.rotor.org.

The Associations' members operate general aviation aircraft – *i.e.,* aircraft other than those operated by the airlines or by the military.  General aviation accounts for approximately two-thirds of the aircraft hours flown in the national airspace system.  The Associations' members operate

thousands of flights annually at East Hampton Airport, and accordingly they have a substantial interest in the disposition of the specific issues presented to the Court for decision in this case.

Moreover, the Associations routinely engage with issues related to general aviation at the national, state, and local levels, including the importance of preserving access to airports throughout the U.S. Those airports and that access is increasingly under threat, to the detriment of the public interest. In many cases, the restrictions on the use of an airport have been shown to be both unnecessary and illegal, based upon a full and fair understanding of the underlying facts and law. In addition to other advocacy, the Associations frequently have participated in court and administrative litigation to prevent the loss or limitation of airports. Examples include <u>Friends of the East Hampton Airport, Inc. v. Town of East Hampton</u>, 841 F.3d 133 (2d Cir. 2016) and <u>National Business Aviation Association, Inc. v. Town of East Hampton, New York</u>, FAA docket no. 16-15-08, Final Agency Decision and Order, 2020 WL 6818718 (July 9, 2020) (attached as the Associations' Exhibit 1).

### III. <u>Facts</u>

For the purposes of this Brief, the Associations adopt the factual statements that are included in Zip's complaint and have been briefed in support of its motion for a preliminary injunction. In summary, East Hampton has a track record of imposing illegal restrictions on operations at HTO – and, instead of engaging with HTO users to discuss and develop voluntary solutions to reduce any impacts, now has propounded a new restriction (*i.e.*, a unilateral ban on Special Visual Flight Rules ("SVFR") procedures, implemented by RVA), which is also illegal.

The SVFR prohibition that has been implemented at HTO by East Hampton, via RVA, frequently – although not exclusively – affects operations by helicopters. If not equipped with the equipment necessary for Instrument Flight Rules ("IFR") operations, those helicopters and other

aircraft cannot complete a flight to or depart from HTO if meteorological conditions change such that Visual Flight Rules ("VFR") operations are not permissible and the tower does not authorize them to operate under SVFR.  SVFR operations are safe, and historically have been allowed by the FAA at HTO and at airports across the U.S.  As for Zip, the impermissible and unjustified ban on SVFR at HTO significantly impacts and impedes the activities of members of the Associations.

The Associations further note that on July 1, 2021, HTO's Airport Director responded to the FAA's June 30, 2021 letter (Exhibit 5 to Zip's motion) with a letter which baldly asserted that HTO "has determined that Special VFR clearances are not appropriate at HTO under any circumstances" and that "there will be no changes to the HTO Airport Operating Procedures."  The letter is attached as the Associations' Exhibit 2 and is subject to judicial notice as a public record of the Town.  Moreover, in a July 15, 2021 email that is also subject to judicial notice by this Court and is attached as the Associations' Exhibit 3, HTO's Airport Director stated to a list of recipients that: "To be clear, our motivation for the Special VFR restriction is based solely on safety."

IV. **Argument**

The Associations concur with Zip that the Town's prohibition on the use of Special Visual Flight Rules ("SVFR") procedures at HTO, as implemented by RVA, is an unwarranted access restriction and inconsistent with federal law, and accordingly should be enjoined.  The Town's actions are of concern not only because the prohibition directly disrupts air traffic near HTO and in the immediate region – *e.g.*, by discouraging and depending on weather conditions specifically prohibiting certain helicopter and other aircraft operations – but also has regional and national consequences.  If upheld, the Town's actions would signal to other airports that they can impose similar restrictions inconsistent with federal law, effecting the piecemeal disassembly of the national airspace system.  That would be contrary to decades of case law, Congressional intent,

4

and the specific mission of the FAA. "Planes do not wander about in the sky like vagrant clouds. They move only by federal permission … under an intricate system of federal commands. The moment a ship taxies onto a runway, it is caught up in an elaborate and detailed system of controls." Northwest Airlines v. Minnesota, 322 U.S. 292, 303 (1944) (Justice Jackson, concurring).

A. **The Town's SVFR Prohibition is Preempted by Federal Law**

In specific regard to certain of the arguments presented to this Court by Zip:[1]

- **Implied Preemption** – It should be beyond dispute that the FAA has exclusive jurisdiction to regulate aviation safety and the use of airspace. The Town purportedly justifies its prohibition on SVFR based on safety (even though there is no public substantiation for its claims), and cannot dispute that the prohibition affects the use of airspace. The Town simply has no role to play in either of these matters. *See, e.g.*, Blue Sky Entertainment, Inc. v. Town of Gardiner, 711 F.Supp. 678, 692 (N.D.N.Y. 1989) ("[i]n fact, federal law in the area of aviation is so pervasive that it preempts a municipal ordinance which attempts to govern the flight paths of aircraft using an airport which has no control tower, is not served by a certified carrier and has no regularly scheduled flights"). Respectfully, any argument by the Town that its actions

---

[1] The Town's actions also appear to violate certain grant-based assurances between the Town and the FAA, including the prohibition on economic discrimination in 49 U.S.C. § 47107(a)(1), as well as the prohibition on exclusive rights in both that statute and 49 U.S.C. § 40103(e). Based on these requirements, "FAA, not the sponsor, is the authority to approve or disapprove aeronautical restrictions based on safety and/or efficiency at federally obligated airports." Airport Compliance Manual, FAA Order 5190.6B, ¶ 14.3 (September 30, 2009). However, claims premised on those statutes first must be raised in an FAA administrative proceeding under the aegis of 14 C.F.R. Part 16, rather than this Court. But that is not an impediment to this Court reviewing the claims specifically asserted by Zip.

Additionally, the air traffic controllers employed by RVA appear to be at risk of FAA enforcement action for violations of 14 C.F.R. § 65.45(a) and other authority underlying their airman certificates, to the extent that they have implemented directives from East Hampton instead of following FAA procedures.

5

were not preempted should be deemed by this Court not only to be wrong but to be outright frivolous.

- **Section 41713 Preemption** – Similarly, it should be beyond dispute that the local regulation of the routes operated by an "air carrier" – broadly defined by 49 U.S.C. § 40102(a)(2), including operations conducted under 14 C.F.R. Part 135 (*see e.g.*, Valley Med Flight, Inc. v. Dwelle, 171 F.Supp.3d 930, 933-34 (D.N.D. 2016)) – is preempted by 49 U.S.C. § 41713(b), which originally was adopted as a component of the Airline Deregulation Act of 1978 ("ADA"). The Town's SVFR prohibition, which circumscribes the routes that air carriers can utilize in the vicinity of HTO, facially contradicts Congress's deregulatory intent and cannot stand. "[T]he ADA preemption provision involves preclusion of state regulation in an area where there has been a history of significant federal presence, namely navigable airspace." In re Korean Air Lines Co., Ltd., 642 F.3d 685, 693 (9th Cir. 2011).

- **Airport Noise and Capacity Act** – In 1990, Congress adopted the Airport Noise and Capacity Act ("ANCA") (49 U.S.C. § 47521) for the specific purpose of preventing communities from adopting restrictions on the use of their airports, overriding any "proprietor's exemption" that had been recognized in prior case law, absent compliance with procedures set forth in 14 C.F.R. Part 161. There is no question that ANCA applies to East Hampton. *See* Friends of the East Hampton Airport, Inc. v. Town of East Hampton, 841 F.3d 133, 155 (2d Cir. 2016).[2] Nor should there be any doubt that

---

[2] The FAA has confirmed that ANCA encompasses helicopters and not just fixed-wing aircraft. *See* Letter from James D. Erickson, FAA Director of Environment and Energy, to Glenn Rizner, Helicopter Association International Vice President of Operations (July 7, 1997) (https://www.faa.gov/airports/environmental/airport_noise/part_161/media/Van_Nuys_8_28_97.pdf).

6

the SVFR prohibition is an access restriction within the scope of ANCA, irrespective of its purported safety rationale. *See, e.g.*, Millard Refrigerated Services v. FAA, 98 F.3d 1361, 1364 (D.C.Cir. 1996) ("ANCA as interpreted by the FAA … applies to direct as well as indirect restrictions"). Again, there is simply no credible basis for the Town to assert that its actions comply with federal mandates.³

None of this should come as a surprise to the Town. Apart from the FAA's letter dated June 30, 2021, which warned the Town that it was acting illegally, the Town's own aviation counsel previously warned the Town that it could not do precisely what the Town now has done. When the Town first was considering whether to fund a control tower at HTO, the Town sought advice from Peter Kirsch of Kaplan Kirsch & Rockwell LLP, an experienced practitioner. Kirsch explained, at an April 17, 2012 meeting of East Hampton's Board, that the Town had no authority to regulate aircraft in flight, and that the funding of a control tower by the Town and/or the Town's decision (not at issue this proceeding) to no longer accept grants from the FAA made no difference to that outcome:

> Kirsch: "This is one of the few areas where I can be absolutely crystal clear. … Councilwoman, let me make this very clear. The town – in fact, no town – has any authority over aircraft or flight routes. Period. End of subject. Only the FAA can control the flying routes of anything in the sky. Federal money doesn't matter, whether you own/don't own the airport, whether you are friendly/unfriendly makes no difference. All aircraft in the air are controlled exclusively by the FAA."
>
> Board Member Theresa Quigley: "If we have a control tower and someone's sitting in the control tower and telling particular aircraft to come in on a certain route, who is making that determination?"

---

³ Additionally, the FAA has warned the Town that it cannot use airport funds to defend new restrictions if they are promulgated "without following the procedures of ANCA and ignoring the clear instructions of the Second Circuit – which clarified the application of ANCA both in general and to the specific and unique situation of East Hampton." National Business Aviation Association, Inc. v. Town of East Hampton, New York, FAA docket no. 16-15-08, Final Agency Decision and Order, slip op. at 11, 2020 WL 6818718, *10 (July 9, 2020), attached as Exhibit 1.

Kirsch: "Very good question. Let's go through the line of command. And this may become really technical but I think it's important to understand. The town pays for the air traffic control tower. The town pays the salaries of the people in the tower. The people in the tower work under contract to the FAA. They give direction in coordination with other FAA employees and other FAA contractors."

Quigley: "With or without FAA funding?"

Kirsch: "With or without FAA funding. You cannot call them and say: 'Hello, Mr. Controller, can you please move the planes here or there.' No matter who you are, you can't do that. The air traffic control system, which is a very complex system, controls how aircraft fly in the air. Now, why do you want an air traffic control tower? Because if you have a tower, you have somebody – they happen to be an agent of the FAA when they're sitting in the tower – you have somebody telling the aircraft where to fly, and if nobody is telling them where to fly in certain types of airspace, they don't tend to follow the routes as precisely. Let's be very precise, the town does not control what the aircraft control tower employees do. The town pays their salary, and they work for the FAA, just like all other air traffic controllers. So you cannot control routes – you never have been able to control routes. No town can control routes, anywhere in the country. And maybe I'm getting a little picky here with words but I think it's important to be precise because, realistically, if the town is interested in controlling the routes of helicopters into the town, I can go home. There's nothing to do. It will never happen."

*See* http://easthamptontown.iqm2.com/Citizens/SplitView.aspx?Mode=Video&MeetingID=1463 &MinutesID=1485 (starting at about 0:41:00).[4] Despite these warnings, the Town now attempts to regulate the navigation of aircraft in the national airspace system, via a control tower (operated by RVA) which it funds but cannot instruct. That authority is reserved to the FAA, and accordingly Zip should prevail on the merits in this litigation. *See, e.g.*, Arapahoe County Public Airport Authority v. FAA, 242 F.3d 1213, 1222-23 (10th Cir. 2001) (rejecting airport's "apparent assertion

---

[4] The Town's current counsel is Cooley LLP. Intriguingly, Cooley also currently represents a user of another airport that has, as a plaintiff, challenged access restrictions which allegedly are at odds with ANCA and federal preemption – and has obtained a TRO against their enforcement by the airport, which remains in effect. The December 14, 2020 complaint filed by Cooley on behalf of that plaintiff, and the January 3, 2021 order concluding that 49 U.S.C. §§ 47521 and 41713 likely had been violated, in Delux Public Charter LLC v. County of Orange, California, C.D.Cal. no 8:20-CV-2344-JLS, are attached as the Associations' Exhibits 4 - 5.

that so long as they declare their regulatory action necessary for safety or to satisfy aviation needs, they enjoy carte blanche power").

B. **The Issues Raised in this Case Have National Implications**

The Associations emphasize that the implications of this Court's decision will not be limited to East Hampton (even though HTO is an important facility in its own right). The Town can only defend its prohibition on SVFR by asserting that it can and should have the authority to decide whether aeronautical operations are safe, and where aircraft should be allowed to position themselves in the sky. Not only would that proposition contradict decades of precedent, but it would open the door to the balkanization of the national airspace system – i.e., allowing each community with an airport to set its own rules, which would in practice make general aviation impossible amidst a patchwork quilt of restrictions. *See, e.g.*, City of Burbank v. Lockheed Air Terminal, Inc., 411 U.S. 624, 639 (1973) ("it is obvious that fractionalized control ... would severely limit the flexibility of FAA"). *Cf.* CSX Transportation, Inc. v. Williams, 406 F.3d 667, 673 (D.C. Cir. 2005) ("[i]t would not take many similar bans to wreak havoc with the national system").

The authority asserted by the Town would not only be devastating for the industry but for the nation; general aviation not only is critical for the economy but also provides vital services, such as medical evacuation flights. The Town has offered, and indeed can offer, nothing to support the notion that as a matter of policy – much less a matter of law – it should be able to substitute its parochial and unsubstantiated judgment related to safety for that of the FAA, which has the obligation and the expertise to maintain and develop a safe, efficient, and integrated national transportation infrastructure. The FAA is statutorily required to carry out its duties with consideration of "the public right of freedom of transit through the navigable airspace," 49 U.S.C.

§ 40101(c), and "artificial restrictions on airport capacity ... are not in the public interest." 49 U.S.C. § 47101(a)(9). *See also* 49 U.S.C. §§ 40103 and 47103. The FAA routinely warns that preemption over safety and airspace applies to airports and their municipal owners.[5] Thus not only the Town and its agent (RVA), but other airport proprietors nationwide, should not be encouraged – much less specifically authorized – to interfere with the agency's vital mission.

C. **Zip Otherwise is Entitled to a Preliminary Injunction**

Finally, to the extent that Zip's motion turns on the other routine factors for the issuance of a preliminary injunction, the Associations understand that they are also meritorious. For example, "[f]lights in and out of other airports are not an adequate substitute for the flexibility provided by business and corporate air flights in and out of the Airport ... On the issue of irreparable harm, plaintiffs have demonstrated negative impact on the airspace in the New York City metropolitan area and beyond, which cannot be measured in monetary damages." United States v. Westchester County, 571 F.Supp. 786, 797-98 (S.D.N.Y. 1983).

V. **Conclusion**

Zip's motion for a preliminary injunction in this proceeding is meritorious and should be granted to the extent that it will prevail on the merits of its claim, because the Town's prohibition on SVFR is facially at odds with federal law. The Town (and RVA, as the Town's contractor) should be enjoined from implementing that prohibition pending the full briefing of and decision on Zip's Complaint.

---

[5] *See, e.g.*, Letter from Lorelei A. Peter, FAA Assistant Chief Counsel, to Jim Gates, Torrance Airport Association (February 18, 2020) ("[f]ederal courts have found that a navigable airspace free from inconsistent state and local restrictions is essential to the maintenance of a safe and sound air transportation system"), attached as Exhibit 6; Letter from Lorelei A. Peter, FAA Assistant Chief Counsel, to Kathleen A. Yodice, Esq. (December 1, 2020) ("the State lacks the authority to regulate the safety of air traffic patterns, including … whether an airport can be used under instrument meteorological conditions"), attached as Exhibit 7.

Dated: New York, New York
July 28, 2021

Respectfully submitted,

KMA Zuckert LLC

/s/ *Nicholas E. Pantelopoulos*
Nicholas E. Pantelopoulos, Esq. (NP-4969)
1350 Broadway, Suite 2410
New York, New York 10018
Tel. (212) 922-0450
nep@kmazuckert.com

-and-

Jolyon ("Jol") A. Silversmith, Esq.
Barbara M. Marrin, Esq.
888 17th Street, N.W., Suite 700
Washington, D.C. 20006
Tel. (202) 298-8660
jsilversmith@kmazuckert.com
bmarrin@kmazuckert.com

**Counsel for *Amici Curiae* the National Business Aviation Association, Inc., the Eastern Region Helicopter Council, Inc., and Helicopter Association International, Inc.**