Exhibit 1



U.S. Department
of Transportation
**Federal Aviation
Administration**

Office of Airport Compliance
and Management Analysis

800 Independence Ave, SW
Washington, DC 20591

July 23, 2020

Mr. William V. O'Connor
Cooley LLP
4401 Eastgate Mall
San Diego, CA 92121

Mr. Andrew D. Barr
Cooley LLP
380 Interlocken Crescent, Suite 900
Broomfield, CO 80021

Mr. Jol A. Silversmith
KMA Zuckert LLC
888 17th Street, NW, Suite 700
Washington, DC 20006

Dear Messrs. O'Connor, Barr, and Silversmith:

Re:    National Business Aviation Association, Inc. *et al*., v. Town of East Hampton,
       New York, FAA Docket No. 16-15-08

Enclosed is the Federal Aviation Administration's (FAA) Final Agency Decision and Order with
respect to the above-referenced matter.

In arriving at the Final Agency Decision on this appeal, the FAA has reexamined the record in
this Decision, including the Director's Determination, the Administrative Record supporting the
Director's Determination, the Complainants' Appeal, and the Respondent's Reply for consistency
with applicable law and policy. The Complainants' Appeal does not have sufficient persuasive
arguments to reverse any portion of the Director's Determination.

The reasons for upholding the Director's Determination are set forth in the enclosed Final
Agency Decision and Order.

Sincerely,

**LORRAINE M HERSON-
JONES**
Digitally signed by LORRAINE M
HERSON-JONES
Date: 2020.07.23 16:07:44 -04'00'

Lorraine Herson-Jones
Manager, Office of Airport Compliance
 and Management Analysis

Enclosure

Exhibit 1

UNITED STATES DEPARTMENT OF TRANSPORTATION
FEDERAL AVIATION ADMINISTRATION
WASHINGTON, D.C.

NATIONAL BUSINESS AVIATION
ASSOCIATION, Inc. *et al.*,

Complainant,

v.

TOWN OF EAST HAMPTON, NEW
YORK,

Respondent.



FAA Docket 16-15-08

## FINAL AGENCY DECISION AND ORDER

### I. INTRODUCTION

This matter is before the Deputy Associate Administrator for Airports on an appeal of the March 26, 2018, Director's Determination filed by the National Business Aviation Association (NBAA), Shoreline Aviation, Inc., PlaneSense, Inc., Fly the Whale, Inc., Eastern Air Express, Inc., FL Aviation Corporation, Tuckaire, Inc., Autonomic Controls, Inc., Wes Rac Contracting Corporation, Eagle Air, Inc., and JETAS, Inc. (collectively, "NBAA" or "Complainants"). This appeal challenges the determination issued by the Director of the Office of Airport Compliance and Management Analysis, under the Rules of Practice for Federally Assisted Airport Enforcement Proceedings Title 14 Code of Federal Regulations, Part 16 (14 CFR Part 16). The Director's Determination dismissed the Complainants allegation that the Town of East Hampton (Respondent or Town), as the owner and sponsor of East Hampton Airport (HTO), was in violation of the airport's grant assurances. (FAA Exhibit 2, Item 3).

The Complainants argue on appeal that the Director's findings and conclusions are not in accordance with law, precedent, and policy. Specifically, the Complainants state that they "strongly dispute the Director's Determination assertion that the presumptive rule is that fees related to airport legal issues may be paid with airport revenue without any consideration of the purpose of or motivations for those expenditures." (FAA Exhibit 2, Item 1, Pages 3-4).

Exhibit 1

In its Answer to the Appeal, the Town argues that the Director's Determination applies governing law, precedent, and policy, and states, "Complainants have failed to demonstrate otherwise.... Grant Assurance 25, *Airport Revenue*, FAA precedent, and sound policy all permit an airport sponsor to use airport revenue to pay for legal defense costs associated with challenges to laws that set forth airport operating rules." (FAA Exhibit 2, Item 2, Page 1).

## II. PARTIES TO THE COMPLAINT

### 1. Appellants/Complainants

NBAA is a not-for-profit corporation representing member companies, which own general aviation aircraft to facilitate the conduct of their businesses or which are otherwise involved with business aviation. NBAA represents its members' interests by initiating or participating in court actions and proceedings before regulatory agencies such as the FAA. Numerous NBAA members utilize HTO as their home base. In addition to NBAA, the other Complainants include Shoreline Aviation, Inc., PlaneSense, Inc., Fly the Whale, Inc., Eastern Air Express, Inc., FL Aviation Corporation, Tuckaire, Inc., Autonomic Controls, Inc., Wes Rae Contracting Corporation, Eagle Air, Inc., and JET AS, Inc. (*Director's Determination*, FAA Exhibit 2, Item 3, Page 2).

### 2. Respondent

HTO is a public-use, general aviation airport situated on the western border of the Town of East Hampton, Long Island, New York. The airport serves private aviation, charter flights, and other kinds of operations, which use a variety of aircraft types, including single-engine aircraft, twin turboprop aircraft, jets of varying sizes, and helicopters. The FAA has designated HTO as a "regional" facility "significant" to the national aviation system. (*Director's Determination*, FAA Exhibit 2, Item 3, Page 1).

The development of HTO was financed, in part, with the FAA Airport Improvement Program (AIP) funding, authorized by the *Airport and Airway Improvement Act of 1982*, as amended, 49 U.S.C. § 47101, *et seq*. Under the provisions of this Act, the sponsor is obligated to comply with the FAA sponsor grant assurances and related Federal law, 49 U.S.C. § 47107. Since 1983, HTO has received $10.3 million in AIP funding. The most recent grant, received in 2001, was for $1.4 million to rehabilitate HTO's terminal apron. (*Director's Determination*, FAA Exhibit 2, Item 3, Page 1).

## III. PROCEDURAL HISTORY

On March 26, 2018, the Director issued the Director's Determination in this matter. (FAA Exhibit 2, Item 3).

Exhibit 1

On April 25, 2018, the Complainants filed their Appeal from the Director's Determination. (FAA Exhibit 2, Item 1).

On May 14, 2018, the Respondent filed its Reply to the Appeal of the Director's Determination. (FAA Exhibit 2, Item 2).

## IV. SUMMARY OF THE DIRECTOR'S DETERMINATION

In a decision issued on March 26, 2018, the Director found that the Town's use of airport revenue to pay attorney's fees did not violate Grant Assurance 25. The attorney's fees covered legal services that facilitated the Town's implementation of noise restrictions at HTO, including the costs to litigate challenges to those restrictions.

The noise restriction ordinances implemented by the Town of East Hampton were first challenged in District Court, where the Town prevailed, in part, with regard to a motion for preliminary injunction. The District Court found that the *Airport Noise and Capacity Act of 1990* (ANCA), 49 U.S.C. 47521-47534, did not displace the proprietor exception to the Airline Deregulation Act, and therefore the Town could enact reasonable noise-based restrictions. In considering a preliminary injunction, the Court found that plaintiffs (which included NBAA) were not likely to succeed on the merits with regard to claims that the curfews were unreasonable. Thus, the Town's curfews were not enjoined. The Court did enjoin the Town's weekly limit on "noisy aircraft." *Friends of East Hampton Airport, Inc. et. al. v. Town of East Hampton*, 152 F. Supp. 3d 90, 111 (E.D.N.Y 2015). On appeal, the Second Circuit found that the Town enacted the noise restriction ordinances without complying with the procedures contained in ANCA, and therefore the local laws, in their entirety, were federally preempted. *Friends of East Hampton Airport, Inc. et. al. v. Town of East Hampton*, 841 F.3d 133 (2nd Cir. 2016). (FAA Exhibit 2, Item 17).

In the Determination, the Director recited the applicable legal standard, i.e., that airport sponsors may use airport revenues for the capital or operating costs of the airport. (FAA Exhibit 2, Item 3, Page 6). Citing FAA Order 5190.6B, the Director recited long-established agency policy that airport revenue may be used for attorney's fees "to the extent these fees are for services in support of ...operating costs that are otherwise allowable." (FAA Exhibit 2, Item 3, Page 6).

Further, the Director found that nothing exists in FAA policy to restrict a sponsor from using airport revenue to pay for legal obligations, activities, and costs, and further noted that nothing in law specifically requires a "benefit to an airport or its users" test to be applied when evaluating airport revenue spent on legal services. Moreover, the Director found that a sponsor may incur legal costs by enacting management or operational actions that relate to airport operations. The fact that the Town did not prevail, given the totality of circumstances involved in this matter,

Exhibit 1

does not equate the payment of legal fees to revenue diversion. The Director explained that, to the contrary, the federal obligations actually require that a sponsor retain the ability to take and pay for legal actions, as part of its obligation to preserve its rights and powers, and/or to take necessary action to defend itself in court. (FAA Exhibit 2, Item 3, p 6).

## V. APPEALING THE DIRECTOR'S DETERMINATION

Pursuant to 14 C.F.R. § 16.33(c) a party adversely affected by the Director's Determination may file an appeal with the Associate Administrator within 30 days after the date of service of the initial determination.

Review by the Associate Administrator is limited to an examination of the Director's Determination and the administrative record upon which such determination was based. The Associate Administrator does not consider new allegations or issues on appeal unless it is warranted by a good cause. *See* 14 C.F.R. §16.33(f). Upon appeal the Associate Administrator determines whether to issue a judgment or dismissal using the following analysis:

(1) Are the findings of fact each supported by a preponderance of reliable, probative, and substantial evidence contained in the record?

(2) Are conclusions made in accordance with law, precedent and policy?

(3) Are the questions on appeal substantial?

(4) Have any prejudicial errors occurred?

14 C.F.R. § 16.33(e). In this matter, the Deputy Associate Administrator will perform the duties of the Associate Administrator.

## VI. APPLICABLE FEDERAL LAW AND FAA POLICY

The law and policy applicable to this issue is found in 49 U.S.C. §§ 47107(b) and 47133, Grant Assurance 25, *Airport Revenues,* and the *Policy and Procedures Concerning the Use of Airport Revenues (Revenue Use Policy,* 64 Fed. Reg. 7696, Feb. 16, 1999.

Grant Assurance 25, *Airport Revenues,* which implements 49 U.S.C. §§ 47107(b) and 47133, provides that:

> [a]ll revenues generated by the airport and any local taxes on aviation fuel established after December 30, 1987, will be expended by it for the capital or operating costs of the airport; the local airport system; or other local facilities which are owned or operated by the owner or operator of the airport and which are directly and substantially related to the actual air

4

Exhibit 1

transportation of passengers or property; or for noise mitigation purposes on or off the airport.

Additionally, the FAA's *Revenue Use Policy* cites two instances of permitted uses relevant to this case as follows:

1. The capital or operating costs of the airport, the local airport system, or other local facilities owned or operated by the airport owner or operator and directly and substantially related to the air transportation of passengers or property. Operating costs for an airport may be both direct and indirect and may include all of the expenses and costs that are recognized under the generally accepted accounting principles and practices that apply to the airport enterprise funds of state and local government entities....

5. Lobbying fees and attorney fees to the extent these fees are for services in support of any activity or project for which airport revenues may be used under this Policy Statement.

*Revenue Use Policy,* 64 Fed. Reg. 7696, 7718 (Feb. 16, 1999).

## VII.   ISSUE ON APPEAL

The Deputy Associate Administrator identified one issue to be reviewed on appeal, whether the Director erred in finding that the Town of East Hampton was not in violation of Grant Assurance 25.

## VII. ANALYSIS AND DISCUSSION

On appeal, NBAA argues that the Director's Determination is not in accordance with applicable law, precedent and policy, and must be reversed. (FAA Exhibit 2, Item 1, Page 1).

### A. Arguments of the Parties and the Director's Determination

NBAA states in its petition what it believes to the central issue in this case as follows:

At issue in this proceeding is what should be a relatively simple matter of law, precedent and policy: Does the prohibition on revenue diversion – as set forth in grant assurance #25 for Airport Improvement Program ("AIP") grants...as well as more generally by 49 U.S.C. § 47133(a) – foreclose an airport sponsor...from utilizing airport revenue to fund unsuccessful litigation specifically intended to perpetuate illegal restrictions on aeronautical operations at an airport?

Exhibit 1

(FAA Exhibit 2, Item 1, Page 1)

NBAA goes on to argue that the Town improperly used airport revenue in the litigation of the airport's illegal restrictions in "seeking to perpetuate the illegal restrictions accordingly constituted an improper use of airport revenue." (FAA Exhibit 2, Item 1, Page 3). NBAA further states that the Director's Determination in this matter is itself illegal. (FAA Exhibit 2, Item 1, Page 3).

In its response, the Town contends that using airport revenues for legal defense cost is permissible. (FAA Exhibit 2, Item 2, Page 1). The Town also states that NBAA's legal argument is without support by arguing that NBAA's "novel theory"—that the Town cannot pay legal costs with airport revenue because the noise restriction ordinances did not "benefit" the airport—is unsupported by law, precedent, or policy. (FAA Exhibit 2, Item 2, Page 6)

The Director's Determination analyzed the issues as follows:

> First, airport sponsors may use airport revenue for the capital or operating costs of the airport. Second, FAA Order 5190.6B [Airport Compliance Manual] provides that airport revenue may be used for attorney fees "to the extent these fees are for services in support of ... operating costs that are otherwise allowable." With that established, the issue then is whether using airport revenue to pay for legal fees -- when such fees are related to airport-related legal issues -- is an element of the "operating costs of an airport." The Director finds that it is.

(FAA Exhibit 2, Item 3, Page 6)

The Director further explained and provided examples of the valid use of airport revenue for legal purposes.

> Legal costs may cover many airport-related purposes, from general liability issues, airport master planning and environmental costs, to legal representation during legal challenges or administrative proceedings, such as a part 16 complaint. Legal costs are valid and common cost-centers in businesses, units of government and airports. Many such entities have legal departments, and legal fees and costs can include in-house expenses, outside counsel fees and costs, special studies, related travel, court costs, and so on. Moreover, if an airport operator believes they have to make a choice between seeking to impose noise-based access restrictions versus potentially closing the airport, then there is likely a greater benefit to the user community to keep the airport operational. 14 CFR Part 161 [the regulations implementing the 1990 ANCA] provides a process for airports to propose (and for the FAA to consider) noise-based access restrictions, and the FAA is not aware of any

Exhibit 1

argument that would suggest an airport cannot use its own revenues to pursue a Part 161 determination.

(FAA Exhibit 2, Item 3, Page 6)

### B. Analysis of NBAA's Arguments

NBAA presents three main arguments. Its first argument is that the Director's Determination is inconsistent with FAA precedent. As part of this argument, NBAA makes three main points. First, citing five points of authority, NBAA argues that the FAA ignored precedent. Second, to buttress this claim, NBAA cites to eight additional authorities. Finally, NBAA states that they do not agree with—what they describe as— the Director's "passing" treatment of ANCA. (FAA Exhibit 2, Item 1).

In its first argument, NBAA asserts that the Director erred by allowing legal costs to be paid with airport revenue "without any consideration for the purposes of or motivations for these expenditures." Appeal Brief, Pages 3-4. While the agency cannot say that "motivation" would never be considered in regard to a question of airport revenue, NBAA fails however to provide any legal support for this position in general or why it should, in particular, be applied here.

As NBAA concedes, the rule for airport revenue arises from Grant Assurance 25, which implements the provisions of 49 U.S.C. § 47107(b), and requires that:

> [a]ll revenues generated by the airport ... will be expended by it for the capital or operating costs of the airport; the local airport system; or other local facilities [which are] owned or operated by the owner or operator of the airport and [which are] directly and substantially related to the air transportation of passengers or property....

The *Revenue Use Policy,* which constitutes FAA's long-standing interpretation of the revenue use statute and assurance, defines "unlawful revenue diversion" as:

> the use of airport revenue for purposes other than the capital or operating costs of the airport, the local airport system, or other local facilities owned or operated by the airport owner or operator and directly and substantially related to the air transportation of passengers or property....

*Revenue Use Policy,* 64 Fed. Reg. 7696, 7716 (Feb. 16, 1999).

In addition, the *Revenue Use Policy* contains a section on permitted uses of airport revenue, that expressly allows "attorney fees to the extent these fees are for services in support of any activity or project for which airport revenues may be used under this Policy Statement." *See also* FAA Order 5190.6B, § 15.9(d) (reiterating that legal

7

Exhibit 1

fees can be paid for with airport revenue). None of these authorities include a motivation test and NBAA has cited no support for such a test otherwise. The DC Circuit has ruled that expenses that constitute bona fide and generally accepted operating costs are not subject to additional inquiries related to "value." *Air Transp. Ass'n of Am., Inc. v. Fed. Aviation Admin.*, 921 F.3d 275, 281 (D.C. Cir. 2019).

Despite the absence of a benefit or motivation test with regard to legal fees in our controlling authorities, NBAA cites five authorities that purport to show this precedent and suggests that the Director's Determination failed to adequately consider such precedent. None of the cited cases supports NBAA's position.

NBAA first cites *In the Matter of Compliance with the Federal Obligations by the City of Chicago*, FAA Docket 16-04-09 (Oct. 1, 2004) for the proposition that the costs of deactivating an airport could not be paid for with airport revenue. However, the document that NBAA is citing is a Notice of Investigation, not a final order of the FAA. Moreover, the Chicago matter does not address legal fees, but instead it addresses costs associated with deactivating an airport.

The case at hand does not involve deactivation. Rather it involves legal fees incurred in a dispute involving the Town's implementation of certain noise and access restrictions at an airport that was and is operating. A Notice of Investigation related to the costs of deactivation of an airport does not provide a precedent with regard to the expenditure of attorney's fees on a matter that dealt with operational issues at an airport.

NBAA also cites *Boca Airport, Inc. v. Boca Raton Airport Authority*, FAA Docket No 16-00-10, 2001 WL 438619 (Apr. 26, 2001) for the unremarkable proposition that the payment of airport revenue to a private firm can be considered unlawful if not made for an airport purpose. This case did not impose a benefits or motivation test in its analysis of whether legal fees were permissible.

That case held that legal fees were permissible and that the limitations on revenue diversion are not intended to address the "reasonableness of the amount" of any given fee, but rather whether it is made for an "airport purpose." The *Boca Raton* decision held that attorney's fees, even if accompanied by a $500,000 bonus payment for successful eviction of an airport tenant, was not revenue diversion because it served an airport purpose. In *Boca Raton*, the Director contrasted the allowable payment of an airport's attorney's fees to an improper payment such as one that supported a local government's "general economic development" costs – i.e., costs that do not relate to the airport.

In upholding the *Boca Raton* Director's Determination, the Associate Administrator emphasized that FAA's primary revenue use authorities "contemplate[] the use of airport revenue to pay for ... law firms." *See Boca Aviation*, 2003 WL 1963859, at *41

Exhibit 1

(Mar, 20, 2003). This case does not support NBAA's position that FAA must divine a sponsor's motivation or impose its own view of "benefit" when a sponsor pays attorneys to address legal issues that relate to the airport.

Further, NBAA relies on a Record of Determination in the *Matter of Revenue Diversion by the City of Los Angeles International, Ontario, Van Nuys and Palmdale Airports*, FAA Docket No. 16-01-96, 1997 WL 1120734 (March 17, 1997), to support its position. NBAA quotes part of a sentence from the Record of Determination that generally describes a sponsor's responsibilities under grant assurance 25, i.e., "airport revenues are used for airport purposes, i.e. to support the development, maintenance, and operation of aeronautical facilities at the airport...." Although in its filing NBAA quotes the language as if ends with the word "airport," the sentence actually continues by stating that the income from airport property must be applied to the "operation of a public-use airport," a category that is broader than merely "aeronautical facilities." In any event, this case involved monetary transfers from airport accounts to the City's general funds. The issues involved, in part, whether charges were for services actually provided, whether payments were made more than once, and whether the services and costs were adequately documented. NBAA fails to explain how this case acts to bar the payment of legal fees incurred by an airport in its defense of airport-related matters or whether or not, as a matter of law, such expenditures are subject to a benefits test.

Additionally, NBAA cites a 1988 report from the DOT Inspector General captioned *Diversion of Airport Revenue, Augusta-Richmond County Commission* in which the Inspector General found it was improper to use airport revenue to purchase land that would not be used for the airport but rather would be used for an office park or golf course. As NBAA acknowledges, the FAA concurred in the OIG's somewhat unremarkable finding. NBAA makes no attempt to explain the relevance of this case and, as with its prior cited authorities, the case does not support its arguments.

Finally, NBAA relies on the 1995 decision in the *Second Los Angeles Int'l Airport Rates Proceeding*, DOT Docket No. 95-12-33, 1995 WL 757815 (Dec. 22, 1995), *amended by* DOT Final Decision on Remand, Docket OST-97-2329 (Docket 50176), Docket OST-95-474 (Dec. 23, 1997), *aff'd, City of Los Angeles v. DOT*, 165 F.3d 972 (D.C. Cir. 1999) (hereinafter Rate Case). Unlike other cases cited by NBAA this case does address legal fees. However, at issue was not whether such fees could be paid with airport revenue but whether they were a permissible element of the airport's rate basis. Rate Case at *38.

DOT ultimately held that legal fees could be part of the rate basis. *Id.* The opinion noted that litigation costs "are one of the ordinary costs of doing business." Rate Case at *39. DOT noted precedent in utility rate cases where recovery of legal fees

Exhibit 1

for litigation was allowed even where the litigation resulted in a judgment that the entity had violated the law.[1] Rate Case at *40. DOT did indicate a willingness to revisit the issue based on policy grounds if the landing fee issues in the case "continue[d] to be so contentious," but it never has done so. Rate Case at *41. And, if it had been revisited, the issue was not the use of airport revenue, but rather how such expenses could be incorporated into a rate base.

NBAA cites the Rate Case for the proposition that "if legal costs had been incurred in the defense of impermissible expenditures, those legal costs were themselves impermissible expenditures." (FAA Exhibit 2, Item 1, Page 5). This characterization of the holding is inaccurate. Moreover, in this case, the legal costs were not incurred "in the defense of impermissible expenditures." East Hampton ultimately did not prevail in its litigation, as the Town's noise restriction ordinances were ultimately found to be preempted by federal law, but its expenditures were not "impermissible." NBAA cites no authority to the contrary.

In addition to NBAA's five "most significant precedents" that have been analyzed in this decision, NBAA cited eight other authorities ranging from cases decided under 14 CFR part 16 to "bulletins" that provide "best practices." As discussed above, the cases cited by NBAA do not support its position.

It is not necessary to analyze these other documents in detail because none of them is on point. Rather, they deal with "managerial processes" that limit aeronautical utility; the need for ground access projects to serve airport passengers; a finding that the airport should not be charged for an audit of a city's general fund where such audit was used to resolve diversion issues; the impermissibility of charging for building permits on airside projects where no actual inspection or oversight service actually occurred; limitations on airport payments for police services; limitations on charging an airport for off-airport services provided by a fire station located on airport; the need for adequate documentation when reimbursing a city's general fund; legal fees related to a hypothetical condemnation of a portion of the airport; and impermissible payments to subsidize an airline's costs. As with its primary authorities, these cases do not warrant reversal of the Director.

Finally, NBAA objects to the Director's observation that airport revenue can be used to pay for the costs associated with a Part 161 application. According to the NBAA certain legal cost are simply impermissible. In such cases the only way that an airport could use airport revenue to pay such cost is if a statute specifically authorizes the expense. NBAA asserts that ANCA is an example of a statute that

---

[1] In the East Hampton matter the Second Circuit ultimately ruled that the Town's restrictions did not comply with the procedures mandated by 49 U.S.C. § 47524 and therefore its local ordinances were "federally preempted." *Friends of the East Hampton Airport, Inc. v. Town of East* Hampton, 841 F. 3d 133, 151-152, 155 (2d Cir. 2016).

Exhibit 1

authorizes otherwise impermissible legal costs. NBAA concludes that since the Town did not use ANCA when it adopted its noise-based access restrictions, that there is no statutory authorization for the legal fees. There is no authority for the rule that certain legal costs are impermissible unless authorized. Moreover, ANCA, which NBAA cites as an example of such a statute, contains no such language. The fact that the Town did not follow ANCA, particularly in the context of this case, does not render the payment of legal fees into revenue diversion, and does not amount to "bad faith" and a "unique case of abuse." (FAA Exhibit 2, Item 1, Page 7).

Regarding the litigation for which attorney fees were expended, the U.S. Courts of Appeals for the Second Circuit ruled that the Town's action was federally preempted and that the Town failed to follow the ANCA procedures in 49 U.S.C. 47524(b) and (c). *See Friends of East Hampton Airport, Inc. et. al. v. Town of East Hampton*, 841 F.3d 133, 151-152, 155 (2nd Cir. 2016). In the litigation, the Town argued that the FAA, in prior correspondence with then Congressman Timothy Bishop, had appeared to indicate that ANCA was inapplicable at this airport. *Id.* at 140.

While the FAA may disagree with the positions the Town asserted in litigation, the claims were not frivolous. In fact, in the district court proceeding, two of the Town's restrictions were upheld because they fell within the proprietor's exception, an exception that, according to the Court, permitted "reasonable" local noise restrictions. *See Friends of East Hampton Airport, Inc. et. al. v. Town of East Hampton*, 152 F. Supp. 3d 90, 109-112 (E.D.N.Y 2015). Ultimately, the Second Circuit rejected arguments that ANCA procedures do not limit the scope of the proprietor exception.

Moreover, the treatment of this case by the District Court and the Second Circuit adds support to our decision. If going forward the Town decided to promulgate a new version of its noise restriction ordinances without following the procedures of ANCA and ignoring the clear instructions of the Second Circuit -- which clarified the application of ANCA both in general and to the specific and unique situation of East Hampton -- then this would be a different case. Ultimately, NBAA's position with regard to ANCA is unclear. To the extent it is suggesting that the Town needed specific statutory authority to pay its lawyers, that argument is unpersuasive. None of these observations or arguments provide a ground for reversing the Director.

The second argument raised by NBAA is that the Director's Determination represents "bad policy." (FAA Exhibit 2, Item 1, Pages 1 and 7). According to NBAA, the FAA is simply "declin[ing] to regulate" and has failed to address the "misappropriation of airport funds." (FAA Exhibit 2, Item 1, Page 7).

Exhibit 1

In response, the Town of East Hampton notes that it "focus[es] entirely on the Director's statements regarding the unworkability of the proposed rule and the burden to FAA if the rule [sought by NBAA] were to be adopted." (FAA Exhibit 2, Item 2, Page 18). The Town further points out that under the rule proposed by NBAA, airport sponsors would need to seek guidance from the FAA before taking legal actions. The Town notes that "in no other context is a sponsor compelled to obtain pre-clearance from the FAA to conduct its day-to-day responsibilities as manager and proprietor of the airport". (FAA Exhibit 2, Item 2, Pages 18 and 19). Finally, the Town notes that under NBAA's proposed rule it would be impossible for an airport sponsor to uphold its federal obligations, such as the ability to preserve its rights and powers under Grant Assurance 5. (FAA Exhibit 2, Item 2, Page 19).

The Deputy Associate Administrator finds no reason to depart from the holding of the Director.

First, in its policy arguments, NBAA has not pointed to any of FAA's enumerated statutory policies as grounds for reversal. *See* 49 U.S.C. §§ 40101(a)(7), 47101(d). Moreover, the Director did not merely decline to regulate. The Director provided an answer, one based on law and precedent, i.e., a sponsor's payment of attorney's fees for airport related legal work does not ordinarily constitute revenue diversion and no facts here warrant a disparate outcome.

Second, as noted above, the Town argues that NBAA has misconstrued the rationale of the FAA's decision by characterizing it as one solely based on diminishing administrative burdens on the FAA. (FAA Exhibit 2, Item 2, Page 18). NBAA's reading of the Director's rationale is incorrect.

The rule that NBAA would have FAA accept is both impractical and unworkable[2] – and that avoiding such an outcome is a legitimate and compelling policy objective – the primary rationale for this holding is based on law and long-standing precedent. In particular, it is based on the law in 49 U.S.C. § 47107(b), Grant Assurance 25 *Airport Revenues*, and FAA Order 5190.6B.

Third, to the extent the Director's decision was policy driven, upon review, the policy elucidated by the Director is correct. In conducting business operations an

---

[2] In response to the Director's argument that such a rule would be unworkable, NBAA points to The Equal Access to Justice Act (EAJA), 5 USC § 504. According to NBAA, the FAA already has an obligation under EAJA to evaluate whether a litigation position was "substantially justified." NBAA argues if FAA can conduct an evaluation in that context, then it is capable of conducting one in cases such as this. Accepting NBAA's premise for the sake of argument, the fact that FAA is capable of making such evaluations or is required by statute to do so in other circumstances, does not mean that is the right answer here; nor does it mean that undertaking such a burden is appropriate or required by law. EAJA is a different statutory scheme - with a vastly different purpose - that adds little light to the issues herein. The evaluation under EAJA is triggered post-litigation and occurs in matters where the government is a party to an adversary adjudication, which is not the case here. Despite NBAA's attempt to draw what appears to be an analogy, the differences are clear and does not further NBAA's argument.

Exhibit 1

airport should maintain the ability to carry out acts related to airport operations, and as an extension of that ability, to be able to defend its actions if it chooses. The Director noted:

> federal obligations require that an airport sponsor retain the ability to take legal action, and hence pay for it, to preserve its rights and powers, manage the operations of the airport, or simply defend the airport or its own actions in legal challenges.

(FAA Exhibit 2, Item 3, Page 6).

The Director laid out cogent policy reasons to support his determination, and the determination was supported by law and precedent. NBAA may not agree with the policy adopted, but that does not provide grounds for reversal.

NBAA's third and final argument is that the Director's decision "violates federal law." (FAA Exhibit 2, Item 1, Page 9). NBAA argues that Congress expects the FAA "[to] be strict in its enforcement of grant assurance #25 and [49 U.S.C. §] 47133(a)", (FAA Exhibit 2, Item 1, Page 9), and that the FAA "cannot…decline to act to address the revenue diversion at HTO." (FAA Exhibit 2, Item 1, Page 11). The Director found that the Town can lawfully use airport revenue to pay its legal fees associated with the defense of its airport noise restrictions.

The law on the use of airport revenue enacted by Congress in 49 U.S.C. §§ 47107(b), and 47133, is clear – airport revenue may be used for capital or operating costs of an airport. The law forms the basis for Grant Assurance 25. Further, in accordance with the law and Grant Assurance, the Revenue Use Policy and Order 5190.6B § 15.9(d) indicate that a sponsor may use airport revenue to pay attorney fees to the extent that fees are for services in support of the airport capital or operating costs.

The Director correctly applied the law and Grant Assurance provision here. The Director stated that "legal costs are common cost-centers in businesses, units of government and airports," (FAA Exhibit 2, Item 3, Page 6), and the Deputy Associate Administrator agrees. The Director held that:

> [a]irport operations include management and administrative tasks, which include different types of costs: equipment, administrative/management costs, personnel costs and legal costs…Legal costs are valid and common cost-centers in businesses, units of government and airports.

(FAA Exhibit 2, Item 3, p 6.)

Exhibit 1

There are many costs involved in the running of an airport. As such, the use of airport revenues to defend a legal challenge is a customary part of the costs required to manage and operate an airport. These costs may include the sponsor's efforts to determine how to mitigate noise at its airport and, as such, defend those actions. Additionally, NBAA has presented no alternative law that applies to these circumstances. Fundamentally, NBAA's argument here fails because no revenue diversion has been found. Therefore, the Director's finding is consistent with the applicable law.

As in any Final Agency Decision issued under Part 16 our holding is based on the facts of the case that is presented. In this case the FAA had written to U.S. Representative Tim Bishop and, in response to his inquiry, stated that the Town "is not required to comply with the requirements under the Airport Noise and Capacity Act of 1990 (ANCA)." The FAA never took an enforcement action against the Town's restrictions nor did it direct or request the Town to desist. The FAA did not commence a lawsuit to block the Town nor did it join the lawsuit brought by the NBAA and others. The District Court refused to enjoin the Town's curfew having found that plaintiffs failed to show the Town acted inappropriately under the proprietor exception. *Friends of the E. Hampton Airport, Inc. v. Town of E. Hampton,* 152 F. Supp. 3d 90, 110 (E.D.N.Y. 2015), aff'd in part, vacated in part, 841 F.3d 133 (2d Cir. 2016).

The Second Circuit ultimately faulted the Town for not "complying with procedures" and held that the Town laws were preempted. *Friends of the E. Hampton Airport, Inc. v. Town of E. Hampton,* 841 F.3d 133, 155 (2d Cir. 2016). Under these facts I am unwilling to hold that the Town's legal fees constitute revenue diversion. Moreover, even if FAA was to adopt some type of test based on the subjective intent of the sponsor, there is evidence in the record that in this case the Town was trying to find a balance between competing stakeholders in such a way that would secure the airport's future.

## VIII. COMPLAINANT'S MOTION

On June 21, 2018, NBAA filed a Motion to submit a report on the *Monitoring of Accountability and Use of Airport Revenues by City of Los Angeles, Department of Airports,* R9-FA-6-001, issued on October 30, 1995, by the DOT's Office of the Inspector General. As a reason for the delay in submitting, NBAA states that the report was unavailable and was obtained through a request under the *Freedom of Information Act* (FOIA), 5 U.S.C. § 552. NBAA argues that the report "provides context for remarks made by the Inspector General and Senator McCain, as cited on p. 10 of [their] Notice of Appeal and Brief" in relation to the use of "[airport] revenues used for nonairport purposes" (FAA Exhibit 2, Item 4, p 1). The Town opposes the Motion by arguing that NBAA did not demonstrate good cause to re-open the record and that the report duplicates other evidence already in the record. (FAA Exhibit 2, Item 5).

Exhibit 1

Pursuant to 14 C.F.R. §16.33(f) any new issues or evidence presented in an appeal or reply will not be considered unless accompanied by a petition and good cause found as to why the issue or evidence was not presented to the Director. Such a petition must:

(1) Set forth the new matter;

(2) Contain affidavits of prospective witnesses, authenticated documents or both, or an explanation of why such substantiation is unavailable; and

(3) Contain a statement explaining why such an issue or evidence could not have been discovered in the exercise of due diligence prior to the date in which the evidentiary record closed.

NBAA has not satisfied the requirements in §16.33(f). First, the points made by the report are the same points that NBAA already made on page 10 of its Notice of Appeal and Brief. Second, this is not a case where the Town has used legal fees to facilitate revenue diversion. Third, the probative value of this report does not justify re-opening the record to this case more than three years from the point that the complaint was filed. Finally, NBAA has not provided a credible reason why in exercising due diligence the report was not submitted before the closing of the evidentiary record. Accordingly, the motion is denied.

## IX. CONCLUSION

The FAA's role in this appeal is to determine whether the Director erred in finding that the Town of East Hampton did not violate Grant Assurance 25. The Deputy Associate Administrator finds no error by the Director in the Director's Determination and it is AFFIRMED.

This decision constitutes a final decision of the Associate Administrator, as entered by the Deputy Associate, pursuant to 14 CFR § 16.33.

### ORDER

**ACCORDINGLY,** it is ORDERED that (1) the Director's Determination is affirmed, (2) the Appeal is dismissed pursuant to 14 CFR § 16.33, and (3) the Complainants' Motion of June 21, 2018 is denied.

### RIGHT OF APPEAL

A party to this decision disclosing a substantial interest in the Final Decision and Order of the Federal Aviation Administration may file a petition for review pursuant to 49 U.S.C. § 46110, in the United States Court of Appeals for the District of Columbia Circuit or in the Court of Appeals of the United States for the Circuit in which the person resides or has its principal place of business. The

Exhibit 1

petition must be filed not later than 60 days after a Final Decision and Order has been served on the party (14 CFR §16.247(a)).

Winsome A. Lenfert Digitally signed by WINSOME A LENFERT
Date: 2020.07.09 18:14:27 -04'00'

Winsome A. Lenfert                  Date
Deputy Associate Administrator
  For Airports

Exhibit 1

**Final Agency Decision**
**FAA Docket 16-15-08**
**Exhibit 1**

**Item 1** –Part 16 Complaint, May 20, 2015. It includes Exhibits 1 through 11:

Exhibit 1: East Hampton Town Board Resolution 2015-411- Local Law Amending Chapter 75 (Airport) of Town Code Regulating Nighttime Operation of Aircraft at East Hampton.

Exhibit 2: East Hampton Town Board Resolution 2015-412- Local Law Amending Chapter 75 (Airport) of Town Code Regulating Evening, Nighttime and Early Morning Operation of Noisy Aircraft at East Hampton Airport.

Exhibit 3: East Hampton Town Board Resolution 2015-413- Local Law Amending Chapter 75 (Airport) of Town Code Regulating Operation of Noisy Aircraft at East Hampton Airport.

Exhibit 4: East Hampton Town List of Noisy Aircraft dated, March 3, 2015.

Exhibit 5: Settlement Agreement- Civil Action No. CV-03-2635, dated April 11, 2005.

Exhibit 6: Request For Proposal (EH2014-105): Noise Study at the East Hampton Airport.

Exhibit 7: East Hampton Town Board Resolution 2015-569- Local Law Amending Chapter 75 (Airport) of Town Code Clarifying Penalties Provisions and Definition in the Law and Providing For Evaluation of the Effectiveness of Restrictions.

Exhibit 8: February 2, 2015, letter from NBAA, AOPA, & NATA to Supervisor, Town of East Hampton referencing East Hampton Airport.

Exhibit 9: March 12, 2015, letter from NBAA, AOPA, & NATA to Supervisor, Town of East Hampton.

Exhibit 10: April 21, 2015, Town of East Hampton Press Statement, Lawsuit Against Town of East Hampton.

Exhibit 11: April 7, 2015, Regulations to Address Noise and Disturbance from Operations at East Hampton Airport (HMMH Presentation).

**Item 2** - *Notice of Docketing,* dated March 31, 2015.

**Item 3** - *Respondents Motion to Dismiss Complaint*, June 24, 2015.

**Item 4** - *Respondents Memorandum of Points and Authorities in Support of its Motion to Dismiss Complaint*, June 24, 2015.

**Item 5**- *Respondents Motion to Suspend Filing an Answer Until FAA Rules on Respondent's Motion to Dismiss Complaint*, June 24, 2015.

**Item 5A**- *Respondents Unopposed Motion for Extension of Time to File Its Answer*, August 26, 2015.

**Item 6** - *Complainant's Answer to Respondents Motion to Dismiss*, July 20, 2015.

Exhibits 1: *Memorandum and Order 15 CV-2246* (JS) (ARL), 06/26/15.

Exhibit 1

Exhibits 2: Article – *Manhattan Company Says Its Quieter Helicopters Can Fly Under East Hampton Noise Rules*, May 3, 2015.

Exhibits 3: DOT transmittal letter and document to MWAA, October 29, 2008.

**Item 6A** - *Respondent's Reply in Support of Its Motion to Dismiss the Complaint*, August 3, 2015.

**Item 6B**- *Complainant's Surreply to the Reply Filed by the Town of East Hampton*, August 5, 2015.

**Item 7** - *Complainant's Reply to the Answer*, October 19, 2015.

**Item 8** - *Respondents Reply in Support of its Motion to Dismiss the Complaint*, October 19, 2015.

**Item 9**- *2016 Update: Progress Toward Town Board's Goals for the East Hampton Airport*, Presentation to the Town Board, March 18, 2016.

**Item 10** - *Respondents Unopposed Motion for Extension of Time to File its Answer*, August 25, 2015.

**Item 11**- *Respondents Unopposed Motion for Extension of Time to File its Answer*, August 25, 2015.

**Item 11A**- FAA Order *Granting Respondent an Extension of Time to Submit an Answer to the Complaint*, September 1, 2015.

**Item 12**- *Respondents Answer to Part 16 Complaint filed by the Complainant*, October 8, 2015.

**Item 12A**- Respondents *Memorandum of Points and Authorities In Support Of Its Answer to the Complaint*, October 8, 2015.

Exhibits 1: Town of East Hampton Press Release, June 26, 2015.

Exhibits 2: Resolution 2015-473.

Exhibits 3: Resolution 2015-418.

Exhibits 4: Resolution 2015-838.

**Item 13**- *Complainant's Reply to the Answer of the Town of East Hampton*, October 19, 2015.

Exhibits A: Town of East Hampton Memo, September 18, 2015.

Exhibits B: HTO Operations & Complaints Reports.

Exhibits C: East Hampton Airport July & August 2015 Operations & Company Update.

Exhibits D: Article – Airport Suits Will Cost Town Nearly $1 Million, September 17, 2015.

Exhibits E: Town of East Hampton Airport Obligations (Presentation), October 11, 2011.

Exhibits F: Congressional Record (1938 Extract).

Exhibits G: HeliNY.com Web page.

Exhibit 1

Exhibits H: Supplemental Declaration of Kurt Carlson, Case No. 15 Civ.2246 (JS) (ARL), Supplemental Declaration of Scott E. Ashton, Case No. 15 Civ.2246 (JS) (ARL), and Supplemental Declaration of Chris Vellios, Case No. 15 Civ.2246 (JS) (ARL).

Exhibits I: Resolution 2015-804.

Exhibits J: Local News extracts, 2015.

**Item 14**- *Respondents Rebuttal in Support of its Motion to Dismiss and Answer to the Complaint*, October 30, 2015.

**Item 15**- *Memorandum & Order*, 15-CV-0441(JS)(ARL), Filed 02/29/16.

**Item 16**- Article - *East Hampton Airport: A Victory for Aviation, But Disputes Continue*, January 12, 2017.

**Item 16A**- Article – *Town of East Hampton Explores Limits of Aircraft Nosie Regulations*, May 5, 2015.

**Item 17**-Friends Of The East Hampton Airport, et al v. Town Of East Hampton, United States Court of Appeals for the Second Circuit, Case 2:15-cv-02246-JS-ARL, Decided 11/04/16.

**Item 18**-*Preliminary Injunction and Stay Order*, Friends Of The East Hampton Airport, Inc., et al. v. The Town Of East Hampton, United States District Court Eastern District Of New York, 15 CV 2246 (JS) (ARL), January 11, 2017.

**Item 19**- *Grant History* for HTO, 8/8/2016.

**Item 19A** - *Airport Master Record* for HTO, 8/8/2016.

**Item 20**- FAA *Notice of Extension of Time*, February 26, 2016.

**Item 21**- FAA *Notice of Extension of Time*, May 10, 2016.

**Item 22**- FAA *Notice of Extension of Time*, August 30, 2016.

**Item 23**- Article - *Legal Authority of East Hampton Town Airport Restrictions Debated in Court* (2016).

**Item 24**- Article - *Aviation Community Is Forced To Go To Court To Confront The Town Board's Illegal Actions At East Hampton Airport (KHTO)*, April 24, 2015.

**Item 25**- Article – *It's Your Noise. Take Some Responsibility,'…East Hampton Airport*, February 14, 2013.

**Item 26**-Article – *Consultant: Helicopters Failed To Follow Flight Paths in East Hampton*, November 1, 2014.

**Item 27**-Article - *East Hampton Airport (KHTO) Rules, Economy Is OK, Airlines Survived, Drop the Lawsuit*, October 23, 2015.

**Item 28**-Article - *East Hampton Town to Spend $1 Million On Airport Legal Fight In 2015 Alone*, September 15, 2015.

**Item 29**-*East Hampton Airport (KHTO) Noise Abatement Plan 2016*, prepared by the Eastern Region Helicopter Council.

**Item 30**- Congressmen Lee M. Zeldin and Tim Bishop letters to FAA (2015 and 2011).

Exhibit 1

**Item 31**- *East Hampton Airport Noise Study Advisory Group,* October 29, 2003.

**Item 32**- *Addressing Noise and Disturbance at East Hampton Airport (HTO),* October 8, 2015.

**Item 33**-*Town of East Hampton Airport Helicopter Noise Abatement,* May 20, 2016.

### Final Agency Decision
### FAA Docket 16-15-08
### Exhibit 2

Item 1 – *Notice of Appeal and Brief from National Business Aviation Association, Inc., et al.,* dated April 25, 2018.

Item 2 – *Responsive Brief for Respondent Town of East Hampton, New York, on Appeal from the Director's Determination,* dated May 14, 2018.

Item 3 – *Director's Determination, National Business Aviation Association, Inc., et al.* v. *Town of East Hampton, New York,* dated March 26, 2018.

Item 4 – *Motion for Leave to Submit Additional Document, National Business Aviation Association, Inc., et al,* dated June 21, 2018.

Item 5 – *Town of East Hampton, New York, Response to Complainant's Motion* Filed June 21, 2018, dated July 2, 2018.

Item 6 - *Notice of Extension of Time* until October 12, 2018, dated August 27, 2018.

Item 7 - *Notice of Extension of Time* until November 26, 2018, dated October 12, 2018.

Exhibit 1

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on July 23, 2020, I sent via electronic mail a true copy of the foregoing document addressed to:

FOR COMPLAINANT

Mr. William V. O'Connor
Cooley LLP
4401 Eastgate Mall
San Diego, CA 92121

Mr. Andrew D. Barr
Cooley LLP
380 Interlocken Crescent, Suite 900
Broomfield, CO 80021

FOR RESPONDENT

Mr. Jol A. Silversmith
KMA Zuckert LLC
888 17th Street, NW, Suite 700
Washington, DC 20006
jsilversmith@kmazuckert.com
bmarrin@kmazuckert.com

Copy to:
FAA Part 16 Airport Proceedings Docket (AGC-600)
FAA Office of Airport Compliance and Management Analysis (ACO-100)
FAA AEA Region

Viola Cijntje
Office of Airport Compliance
and Management Analysis