Exhibit 6

U.S. Department
of Transportation

**Federal Aviation
Administration**

Office of the Chief Counsel

800 Independence Ave., S.W.
Washington, D.C. 20591

FEB 18 2020

Mr. Jim Gates
Torrance Airport Association
2785 Pacific Coast Highway E164
Torrance, CA 90505

Dear Mr. Gates:

Thank you for your letters in which you informed the Federal Aviation Administration (FAA) of your receipt of an "Early Left Turn Violation" from the Community Development Department, City of Torrance. You request the FAA to contact the Torrance City Attorney to "clarify in writing the FAA's exclusive authority" by quoting a statement on the FAA website.

You assert that the City's enforcement of the ordinance requires pilots to make a choice in terms of which directive to comply with: either the Torrance Municipal Code or FAA Air Traffic Control (ATC) instructions. You provided copies of two "Early Left Turn Violation" notices that the City issued in 2019 to pilots. Both notices state that "[w]hile the FAA control tower may have authorized the above noted procedure it is a violation of the Torrance Municipal Code." Both notices state that "future violations are subject to enforcement." You requested the FAA "immediately clarify in writing the FAA's exclusive authority to the Torrance City Attorney." While the FAA declines to send unsolicited correspondence to the Torrance City Attorney, this letter responds to the inquiries you submitted. Our understanding is that the City is yet to bring any enforcement action related to the code provision.

Congress has long vested the FAA with authority to regulate the areas of airspace use, management and efficiency; air traffic control; safety; navigational facilities; and aircraft noise at its source. 49 U.S.C. §§ 40103, 44502, and 44701-44738. In addition, a citizen of the United States has a statutory public right of transit through the navigable airspace. 49 U.S.C. § 40103(a)(2). Courts have held that Congress has exclusively occupied the field of aviation safety and airspace efficiency such that Federal law preempts state requirements that fall within this field. *See City of Burbank v. Lockheed Air Terminal*, 411 U.S. 624 (1973); *American Airlines v. Town of Hempstead*, 398 F.2d 369 (2d Cir. 1968), *cert. denied*, 393 U.S. 1017 (1969). In *United States v. City of Blue Ash*, 487 F. Supp. 135, *aff'd*, 621 F.2d 227 (6th Cir. 1980), the court upheld preemption of a local ordinance requiring departing planes to make "Noise Abatement Turns"). *See Blue Sky Entertainment, Inc. v. Town of Gardiner*, 711 F. Supp. 678, 692 (N.D.N.Y. 1989) ("[i]n fact, federal law in the area of aviation is so pervasive that it preempts a municipal ordinance which attempts to govern the flight paths of aircraft using an airport which has no control tower, is not served by a certified carrier and has no regularly scheduled flights," citing *Blue Ash*).

Exhibit 62

State and local governments may protect their citizens through land use controls and other police power measures that do not regulate airspace management or aircraft operations. But that power does not extend to many aspects of aircraft operations, including route, altitude, time of operation, and frequency. *See Friends of the E. Hampton Airport, Inc. v. Town of E. Hampton*, 841 F.3d 133 (2d Cir. 2016); *National Helicopter Corp. v. City of New York*, 137 F.3d 81 (2d Cir. 1998).

In addition, State or local governments that own or operate an airport are not prohibited from carrying out their proprietary powers and rights. Accordingly, the airport owner or operator has authority to promulgate reasonable, nonarbitrary, and non-discriminatory regulations addressing aircraft noise and appropriate local interests. *Friends of E. Hampton*, 841 F.3d at 139. Any such restriction would need to comply with the Airport Noise and Capacity Act (ANCA), 49 U.S.C. § 47521 *et seq.*, and 14 C.F.R. Part 161, which outline the process, analysis, and approvals required for imposing a noise or access restriction at an airport.

Section 51.2.3(e) of the Torrance Municipal Code, "Take Offs and Landings," states, "Aircraft taking off to the west shall not turn left until they have either reached the ocean or attained an altitude of fifteen hundred (1,500) feet." Because the Torrance code provision applies to aircraft in flight, it is not consistent with the Federal statutory and regulatory framework described above. Enforcement of the provision would be at odds with various court opinions. As noted, state and local governments lack the authority to regulate airspace use, management and efficiency; air traffic control; and aircraft noise at its source. Federal courts have found that a navigable airspace free from inconsistent state and local restrictions is essential to the maintenance of a safe and sound air transportation system. *See Montalvo v. Spirit Airlines*, 508 F.3d 464 (9th Cir. 2007), and *French v. Pan Am Express, Inc.*, 869 F.2d 1 (1st Cir. 1989).

The "Early Left Turn Violation" letters refer to "a noise sensitive area" and noise abatement procedures. The FAA's ATC Tower at Torrance is aware of such procedures. FAA air traffic controllers generally comply with noise abatement procedures to the extent practicable with exceptions for safety, weather, airspace efficiency, and traffic pattern considerations. The pilot in command is responsible for the safe operation of the aircraft and should advise air traffic control if he or she is unable to comply with any air traffic advisory or instruction.

Thank you for the opportunity to review and respond to your concerns. This letter has been coordinated with the General Counsel's Office (C-60), Office of the Secretary of Transportation.

Sincerely,

Lorelei A. Peter
Assistant Chief Counsel
Regulations Division