**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ZIP AVIATION, LLC,<br><br>        Plaintiff,<br><br>  -against-<br><br>ROBINSON AVIATION (RVA), INC. and TOWN OF EAST HAMPTON,<br><br>        Defendants. | CASE NO. 2:21-cv-04111-GRB-ST |

## DECLARATION OF JAMES L. BRUNDIGE

I, JAMES L. BRUNDIGE, make the following declaration pursuant to 28 U.S.C § 1746:

1. I am the Airport Director of the Town of East Hampton, New York (the "Town"), a position I have held since January 2005. I am an Airline Transport Category rated pilot and am qualified to fly single- and multi-engine aircraft in both visual and instrument meteorological conditions as well as rotorcraft in both visual and instrument meteorological conditions. I am type rated in the Boeing 727, Boeing 757, Boeing 767, Boeing 777, Cessna Citation 500, Dassault Falcon 10, Gulfstream II, Gulfstream III, and Sikorsky S-61. Prior to becoming Airport Director, I was an Assistant Chief Pilot for United Airlines based out of John F. Kennedy Airport. I have also held positions as an FAA Designated Examiner on Boeing 727s and Boeing 777s. Prior to flying commercial aircraft, I served in the United States Air Force as a Fighter-Interceptor pilot, Instructor pilot, and Helicopter Air-Sea Rescue pilot.

2. I make this declaration, based upon personal knowledge, in support of Defendant Town of East Hampton's Memorandum of Law Opposing Plaintiff's Motion for Preliminary Injunction. If necessary, I could and would testify in accordance with what is set forth in this declaration.

3. Attached as **Exhibit 1** is a true and correct copy of the FAA's November 6, 2020, letter to the Town recognizing that the Town has the ability to modify operations at, or even close, the East Hampton Airport as of September 26, 2021. The Town has not determined how what will happen at the Airport in September, but I will be recommending that no SVFR flights are permitted due to the safety hazards such operations pose.

4. Attached as **Exhibit 2** is a true and correct copy of the March 11, 2021 Memorandum "Prohibit Special VFR Operations at HTO." I drafted this memorandum after closely considering the safety hazards posed by the many SVFR operations that occur at East Hampton Airport during poor weather. I concluded that SVFR operations were unduly hazardous to the Town's residents and thus inconsistent with the Town's obligation to protect the safety, health, and welfare of its residents. In short, SVFR is not supposed to be a standard operating procedure; it is an exception to the otherwise firm flight rules established by the FAA. Many operators were treating SVFR as a right as opposed to a privilege and threatening the safety of Town residents.

5. Attached as **Exhibit 3** is a true and correct copy of the 2018 Interfacility Coordination Procedures & Responsibilities agreement between the Town and the FAA. The same terms apply to the renewed agreement for subsequent years, including presently. In this Interfacility agreement, the FAA delegates responsibility of authorizing and controlling SVFR flights to the Town during tower hours (0800 to 2000 local). This delegation occurred, in part, because the Town decided to provide private air traffic control tower services to increase safety at and around the Airport. If the Town had not provided the tower, no SVFR would occur as the airspace would not be "controlled."

6. Attached as **Exhibit 4** is a true and correct copy of an (unexecuted) 2018 letter of agreement between Robinson Aviation and the helicopter operators. The final version was executed but the Town was not provided an executed copy. The same terms apply to renewed agreements each year, including presently. In the letter of agreement, the helicopter operators acknowledge that SVFR is a "privilege" at East Hampton Airport and that this privilege can be "lost" if the letter of agreement is deviated from. Deviations include failing to "fly neighborly," which requires adherence to certain routes, as well as strict adherence to the Noise Abatement routes. If an operator did not sign the letter of agreement, he or she is not permitted to fly SVFR at the Airport.

7. Zip Aviation routinely requested and obtained SVFR clearances prior to March 2021 and thus it is my understanding that Zip was a signatory to the letter of agreement described immediately above.

8. After careful consideration, in March 2021 I determined that the operators were not strictly adhering to the letter of agreement. This included, but is not limited to, deviations from the Noise Abatement routes and other unsafe operations. The most concerning safety violation was the regular "scud running" operations: extremely low flying over residential areas to try and remain clear of clouds. Due to the scud-running aircraft's inability to safely land in the event of an engine problem, it was violating federal aviation regulations. Moreover, I feared that a Town resident would be injured or killed due to these unsafe flights. In my opinion, it was a matter of "when" not "if." Operators should thus not be surprised that the "privilege [of SVFR] during inclement weather" was removed pursuant to the letter of agreement.

9. The FAA delegated authority to the Town for authorizing and controlling SVFR operations. Because of this and other reasons, the Town thus has the tools necessary to protect

its residents and it would be a dereliction of duty for the Town to ignore the safety issues and take on the serious liability of an accident once it was determined that the SVFR was unduly hazardous.

10.  I am aware that Zip is stating that its inability to operate SVFR is affecting its business. Zip can easily avoid any alleged interruption of service by utilizing aircraft and pilots qualified to fly in instrument meteorological conditions under instrument flight rules. Indeed, many operators do this as a matter of course and that is how the FAA envisioned poor-weather operations to occur. Regardless, Zip's decision not to use IFR-qualified aircraft does not justify endangering the Town's residents.

11.  I announced the Town's SVFR policy in March 2021. Since that time, I have spoken with the FAA several times regarding the policy. **Exhibit 5**, **Exhibit 6**, **Exhibit 7**, **Exhibit 8**, and **Exhibit 9** are all true and correct copies of correspondence that I have had with the FAA regarding this SVFR policy. The FAA recognizes that SVFR is to be administered on a case-by-case basis. I have determined that there are no circumstances under which SVFR is safe, meaning that each case-by-case assessment will lead to a denial of the request by air traffic control. On July 1, 2021, I told the FAA as much in a letter. I have not yet received a response to my July 1 letter.

12.  I also announced the SVFR policy publicly to ensure all stakeholders were aware. **Exhibit 10**, **Exhibit 11**, **Exhibit 12**, **Exhibit 13**, and **Exhibit 14** are all true and correct copies of notices that I published regarding the SVFR policy. I intentionally noticed every interested stakeholder to ensure that this safety policy would be known and respected. I am happy to announce that nearly all operators respected the policy and that the Airport environment has been demonstrably safer in inclement weather since the policy went into effect. Aircraft flying IFR

are not being forced to dodge SVFR aircraft; the tower can manage IFR aircraft in an orderly manner (which is difficult due to its lack of radar coverage); and the regular flight corridors are not littered with aircraft ducking under clouds over congested and populated areas.

13. For example, over the July 4, 2021, weekend, two days were SVFR and one was VFR. On the two SVFR days combined, the Airport experienced 96 landings total (all were IFR flights, including helicopters). On the single VFR day, the Airport experienced 147 landings. If the Town's policy had not been in place, it is likely that each of the SVFR days would have also experienced 100+ landings, each of which would have occurred in poor visibility. This amount of traffic in poor visibility is unsafe and must be managed to prevent injury or death to Town residents.

14. In July 2021, the FAA published a Notice to Airman (or NOTAM) informing pilots about the Town's policy. NOTAMs are published by the FAA and provide pilots with local information about an airport. The current NOTAM expires on September 13, 2021 (the day after the tower closes for the 2021 year).

15. As of today, Zip continues to operate at the Airport. For example, over the weekend of July 23-25, Zip conducted 29 operations at the Airport. The policy has not affected Zip except in when poor weather prevents it from operating safely and pursuant to federal aviation regulations.

16. On or about July 15, 2021, Zip had a mechanical issue with a helicopter that forced the helicopter (a Bell 407, N88ZA) to remain grounded at the Airport. Apparently the helicopter's engine was experiencing a problem (metal shavings were entering the engine environment which is known to cause engine failure). I reported Zip's conduct to the FAA because, rather than comply with FAA safety standards and either replace the engine on site or obtain a "ferry permit"

to take the aircraft to a maintenance facility, Zip simply flew the helicopter away from the Airport. This is precisely the type of unsafe conduct that leads to accidents, especially if the aircraft had been "scud running" when the engine abnormality appeared.

17.     Attached as **Exhibit 15** is a true and correct copy of a 2018 FAA briefing for the Islip Area air traffic controllers.  It recognizes that the East Hampton Airport has extreme "helicopter volume/complexity" issues and thus authorizes "[a]lternate SVFR helicopter minima at East Hampton Airport."  It is my understanding that these alternate helicopter SVFR minima remain in place today.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct. Executed this 28th day of July, 2021 in East Hampton, New York.

*James L. Brundige*
James L. Brundige
Airport Director